JOURNAL ENTRY AND OPINION
In these consolidated matters, Joanne Redding appeals from judgment entries of the Juvenile Court, which terminated her parental rights and granted permanent custody of her children, Monique, Romello and CorLeone Redding to the Cuyahoga County Department of Children and Family Services. Ms. Redding complains on appeal the court should not have granted CCDCFS permanent custody of her children, alleging the children should have been placed with her instead. After reviewing the record before us, we conclude the trial court did not abuse its discretion and affirm the judgment of the court.
The record before us reveals Ms. Redding gave birth to Monique on September 1, 1985 and Romello on October 31, 1994. On April 10, 1997, CCDCFS filed a complaint for neglect and temporary custody. Following a hearing on July 31, 1997, Monique and Romello were placed in foster care. Thereafter, CCDCFS moved for permanent custody. On October 14, 1998, Ms. Redding gave birth to CorLeone, and a month later CCDCFS filed a complaint for neglect and permanent custody. CCDCFS filed a motion to consolidate these cases, which the court granted.
On May 20, 1999, the court conducted an adjudicatory hearing and social worker, Sonya Weathers, testified she became involved with the Redding family in March 1997 and developed a case plan for Ms. Redding which required her to enroll in alcohol treatment and domestic violence programs and parenting classes and to obtain suitable housing for her children. Ms. Weathers testified that in March 1998, she found Ms. Redding on her front porch with seven men, and she smelled of alcohol. Ms. Redding completed the domestic violence program on July 23, 1998 and the alcohol treatment program in November 1998. However, Ms. Redding failed to provide suitable housing for the children. Ms. Weathers visited her house on May 17, 1999, three days prior to the adjudicatory hearing, and testified as follows:
 The housing condition of feces being scraped over the walls, clothes on the floor, loose electrical wires, buckets of urine in the kitchen, garbage everywhere, urine soaked mattresses.
* * *
 The condition of the house, in the kitchen there was a hole in the ceiling that went to the second floor. There was garbage in the kitchen. She was cooking, on the kitchen stove, was a pot full of dirty water. * * * Upstairs in the bathroom, the water was not running. In the tub, I want to say it was as if somebody threw up in the tub. * * *.
Further in derogation of her case plan, Ms. Redding had an altercation with Robert Harris, Romello's and CorLeone's putative father, where she hit him on his head with a glass bottle requiring eighteen stitches. Based on the condition of Ms. Redding's house and the violent nature of her relationship with Mr. Harris, Ms. Weathers testified CorLeone was not safe in Ms. Redding's house.
Next, Ms. Redding testified she had relapsed into drinking after her eldest son, Adonis, who is not part of this appeal, received a gun shot wound while in the custody of CCDCFS. Further, she testified she is a victim of domestic violence and hit Harris in self defense. Ms. Redding told the court the she hoped the renovations to her house would be completed in a month, and she loved her children very much. At the conclusion of the hearing, the court determined CCDCFS had shown by clear and convincing evidence that CorLeone was both neglected and dependent.
On September 20, 1999, William Moench, the social worker who replaced Ms. Weathers, had the opportunity to attend a family visit and testified Redding ignored CorLeone when he cried and handed him to Monique. She did bring food for the children, but only brought clothes for Adonis. Mr. Moench observed Ms. Redding did not interact with Monique, Romello or CorLeone. She focused on Adonis.
Thereafter, on November 2, 1999, Mr. Moench had the opportunity to view Ms. Redding's house and found a dirty house with no gas, electricity or water. The floors were dirty, and the bedrooms were cluttered with papers. Further, the water pipes were exposed and one half of the kitchen ceiling was missing.
Mr. Moench testified about those incidents during the November 4, 1999 dispositional hearing and also stated no other relatives had visited or expressed any interest in the children.
Next, Mr. Moench's supervisor, Sandra Lazar, testified and told the court the foster parents have a strong interest in adopting all three children. Finally, Heather LaRue, the foster care case manager, stated the children enjoy a good relationship with the foster parents and foster sister. Monique is an excellent student and participates in track, basketball and the high school stepping team, and CorLeone is developmentally normal for his age. Romello has some developmental issues that have been identified. After hearing the evidence, the court granted permanent custody of all three children to CCDCFS.
Ms. Redding appeals from that decision and raises three assignments of error for our review.
 I. THE TRIAL COURT ERRED WHEN IT FOUND CORLEONE REDDING NEGLECTED AND DEPENDENT AND GRANTED EMERGENCY CUSTODY OF THE MINOR CHILD WHERE THE ALLEGATIONS IN THE COMPLAINT ALLEGING NEGLECT WERE NOT PROVEN BY CLEAR AND CONVINCING EVIDENCE.
Ms. Redding contends the court abused its discretion when it determined CorLeone to be neglected and dependent. The State maintains it presented clear and convincing evidence of CorLeone's neglect and dependency. Thus, the issue here concerns whether the court properly adjudged CorLeone to be neglected and dependent.
We begin by noting R.C. 2151.03 defines a neglected child and provides in part:
 (A) As used in this chapter, "neglected child" includes any child:
* * *
 (2) Who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian;
 (3) Whose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being;
* * *
Further, R.C. 2151.04 states as follows:
 As used in this chapter, "dependent child" means any child:
* * *
 (C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;
(D) To whom both of the following apply:
 (1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
 (2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.
In the instant case, the record reveals Ms. Redding has a history of alcohol abuse. Although she has complied with some components of her case plan and entered an alcohol treatment program, the court heard testimony from Ms. Weathers that she visited Ms. Redding and detected alcohol on her breath. Further, Ms. Redding testified she relapsed when Adonis was shot. Finally, at the time of the adjudicatory hearing, Ms. Redding had not fulfilled the terms of her case plan with reference to obtaining suitable housing her children. More than two years had passed and her residence remained in a state of disrepair without the benefit of any utilities. It was unsanitary and unsafe for CorLeone due to exposed electrical wires and water pipes. Based on the evidence in the record, the court properly determined CCDCFS presented clear and convincing evidence of CorLeone's neglect and dependency.
Accordingly, this assignment of error is not well taken and is overruled.
 II. THE TRIAL COURT ERRED WHERE IT DETERMINED THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE MINOR CHILDREN.
 III. THE TRIAL COURT ERRED WHEN IT DETERMINED THAT APPELLANT HAD NOT REMEDIED THE CONDITIONS WHICH CAUSED THE REMOVAL OF THE CHILDREN FROM THE HOME AND THAT THE CHILDREN COULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE PERIOD OF TIME.
Ms. Redding contends the court abused its discretion when it granted permanent custody of her children to CCDCFS in the absence of clear and convincing evidence and when it determined that her children could not be placed with her in a reasonable amount of time. CCDCFS maintains the court did not abuse its discretion when it determined the best interest of the children would be served by granting CCDCFS permanent custody. The issue presented here concerns the permanent custody of the children.
In considering an award of permanent custody, the court must determine whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody. See R.C. 2151.414(D). Next, in determining the best interest of the children during the permanent custody hearing, the court must consider the five factors listed in R.C.2151.414(D), which include the reasonable probability the child will be adopted, the interaction of the child with her parents, siblings and foster parents, the wishes of the child, the custodial history of the child, and the child's need for a legal secure permanent placement. Further, the court must consider the factors enumerated in R.C. 2151.414(E) to determine if the children could be placed with Ms. Redding in a reasonable time.
In this case, the record reveals, Monique, Romello and CorLeone have lived with the same foster family for two and one-half years. CorLeone was one month old when the court removed him from Ms. Redding's home and placed him with this family where he continues to develop normally for his age. That family has expressed a strong desire to adopt all three children. Monique thrives academically and athletically in this environment and has a positive rapport with her foster sister. Finally, Romello can receive the requisite attention to address his special needs. Even though Ms. Redding undoubtedly loves her children, she has not to date provided safe, stable and sanitary housing for her children, has missed visits, and does not interact with her children in a parental manner. She has had two and one-half years to make the necessary adjustments to her lifestyle to regain custody of her children. We believe it is in the children's best interest to continue to reside in a clean, safe and stable environment and to keep all the siblings together. The children seem to thrive in the environment provided to them by their foster family. We therefore conclude the judgment of the trial court is supported by clear and convincing evidence sufficient to support the court's decision to award permanent custody of the children to CCDCFS and that reasonable efforts were made by the CCDCFS to prevent removal of these children from their home. Accordingly, these assignments of error are not well taken.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 __________________________________ JAMES J. SWEENEY, PRESIDING JUDGE
COLLEEN CONWAY COONEY, J., and O'DONNELL, J., CONCUR.